UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RED BALL TECHNICAL GAS SERVICES, LLC, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-2090 |
| | § | |
| PRECISE STANDARDS & SOLUTIONS, INC., *et al*, | § § § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Pending before the Court is the Joint Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendants Roy Rodriguez, Thomas Kennedy, and Precise Standards and Solutions, Inc. (Doc. No. 13.) Based on consideration of the filings and applicable law, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

The following facts are drawn from Plaintiff Red Ball Technical Gas Services' First Amended Complaint. (Doc. No. 8.) In May 2016, Red Ball purchased ISGAS, Inc. (Doc. No. 8 at 2.) At this point, two employees of ISGAS, Defendants Rodriguez and Kennedy, left to work for Defendant Precise Standards, a direct competitor. (*Id.* at 2–3.) Precise Standards had recently been founded by a former owner of ISGAS, Vinh Hua, and Rodriguez and Kennedy soon became partial owners of Precise Standards as well. (*Id.* at 3, 7.) These maneuvers yielded Red

1

Ball's claims for breach of contract and for misappropriation of trade secrets in violation of Texas and federal law. (*Id.* at 7–9.)

ISGAS was and Red Ball now is in the business of making gas standards, that is, "developing the proper hydrocarbon blend for a specific calibration for extracted raw materials needed in various industries." (Doc. No. 8 at 4.) Since its founding in April 2016, shortly before Red Ball's purchase of ISGAS, Precise Standards has been in the same business. (*Id.* at 7.) At ISGAS, Rodriguez worked as a salesperson, while Kennedy worked as a "blend lab manager." (*Id.* at 5.) The filings do not make clear their roles at Precise Standards.

No party asserts that Rodriguez or Kennedy was subject to a non-compete agreement. Instead, Red Ball alleges that Rodriguez and Kennedy have taken Red Ball's proprietary technical and business information for use at Precise Standards. In Red Ball's view, Rodriguez and Kennedy thereby breached contracts they had formed as employees of ISGAS when they signed that company's Employee Manual, which contains confidentiality provisions. (Doc. No. 8 at 7–8.) Red Ball also asserts that all three defendants, by allegedly taking and using proprietary information, violated Texas and federal law prohibiting the appropriation of trade secrets. (*Id.* at 8–9.)

Red Ball's factual allegations center on a gas cylinder bearing a Precise Standards label that Jimmy Collins, a Red Ball employee, observed at a customer's facility. (Doc. No. 8 at 6–7; Doc. No. 8-1 at 25.) The label was conspicuous because its formatting was identical to Red Ball's, excepting the Precise Standards logo at the top. The label was suspicious because it allegedly bore "calibration certification numbers" issued by the National Institute of Standards and Technology (NIST). (Doc. No. 8 at 6.) As Red Ball explains:

> N.I.S.T. numbers are unique to the specific calibration equipment used for making standards and represent an industry-recognized certification by a third-party

> calibration company that measuring equipment falls within accepted tolerances. In the standards-making industry, N.I.S.T. numbers are updated with each calibration, which generally occurs every six months. To insure traceability of calibration certifications, N.I.S.T. numbers are not reused.

(*Id.*) That Precise Standards' labels would bear NIST numbers is not, in and of itself, indicative of unlawful conduct. Rather, the particular numbers on this label gave that indication. According to Red Ball, the numbers on the label seen by Collins were issued to ISGAS in April 2013, three years before Precise Standards' founding, and should have been valid for no more than one year. (Doc. No. 8 at 6.)

In Red Ball's view, the appearance of old NIST numbers issued to ISGAS on a Precise Standards label implies that Precise Standards was using Red Ball's "trade secret spreadsheets," which record the composition of various specially blended gases and customers' specific uses of them. (Doc. No. 8 at 4–6.) That inference is bolstered by Red Ball's apparent discovery that the gas cylinder observed by Collins actually belonged to ISGAS. (*Id.* at 7.)

In their Motion to Dismiss, Defendants dispute the legally material facts. They disagree that the Employee Manual was a legally binding contract, and they reject the inferences that Red Ball draws from the product label and cylinder observed by Collins. (Doc. No. 13 at 2–6.) Defendants also argue that none of Red Ball's allegations implicates Rodriguez, the former ISGAS salesperson. (*Id.* at 7.)

## II. APPLICABLE LAW

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In turn, the Federal Rules permit a district court to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). The complaint must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When ruling on a motion to dismiss, the court must "construe facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotation omitted).

## III. ANALYSIS

Red Ball has three claims for relief: breach of contract, against Defendants Rodriguez and Kennedy; state-law misappropriation of trade secrets by all three defendants; and violations of the federal Defend Trade Secrets Act by all three defendants. The Court takes these in turn.

### a. Breach of Contract

The basis of Red Ball's breach of contract claims is Rodriguez's and Kennedy's signatures of ISGAS's Employee Manual.[1] (Doc. No. 8 at 3, 7–8.) The Manual required that each employee "shall not use [ISGAS's] confidential and trade secret information, except to the extent necessary to provide services or goods requested by [ISGAS]." (*Id.* at 3.) More importantly, however, the Manual also says that "[t]he contents of this Manual shall not constitute nor be construed … as a contract between the Company and any of its employees. The Manual is a

---

[1] Red Ball originally based its breach of contract claims also on confidentiality agreements that Rodriguez and Kennedy had signed. (Doc. No. 1 at 3–4, 6.) The Amended Complaint excluded the agreements as bases for Red Ball's claims, rendering them a moot issue. (Doc. No. 8; Doc. No. 9 at 3.)

4

summary of our policies, which are presented here only as a matter of information." (Doc. No. 13-1 at 4.) Appropriately, Defendants argue that this Manual cannot furnish the basis for breach of contract claims.

In response, Red Ball argues that even if the Manual did not constitute a contract, it could "provide the terms and conditions of continued employment." (Doc. No. 14 at 3.) That may be, but it is beside the point here. Red Ball has not appeared in this Court to justify its termination of Rodriguez and Kennedy for violating company policy; it is here asserting a breach of contract. Without a valid contract, that claim fails.

Red Ball also argues that the "employer/employee relationship" can imply "an agreement to protect trade secret information." (Doc. No. 14 at 4.) On this basis, Red Ball theorizes that an implied agreement can provide the grounds for a breach of contract claim. (*Id.*) Red Ball relies on *Gonzales v. Zamora*, 791 S.W.2d 258 (Tex. App.—Corpus Christi 1990, no pet.), for the principle that no express agreement on disclosure of confidential materials is required in order for trade secrets to be protected. That is so, and that principle is the foundation of Red Ball's state-law trade secrets claims, discussed below. It is not, however, a valid basis for a breach of contract claim. The Manual expressly states that it is not a contract. As such, the principle articulated in *Gonzales v. Zamora* and the assertions made by Red Ball here are properly pursued through state-law trade secrets claims, not breach of contract. Red Ball's breach of contract claims therefore warrant dismissal.

    b.    **Misappropriation of Trade Secrets under Texas Law**

In Texas law, misappropriation of trade secrets is a common-law tort. *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 737 (Tex. App.—Dallas 2010, no pet.). The plaintiff must

establish "(1) the existence of proprietary information or a trade secret, (2) a breach of a confidential relationship or improper discovery of the information or secret, (3) a use of the information or secret without the plaintiff's authorization, and (4) resulting damages." *RSM Prod. Corp. v. Global Petroleum Group, Ltd.*, 507 S.W.3d 383, 393 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (citing *Hyde Corp. v. Huffines*, 314 314 S.W.2d 763, 776 (Tex. 1958)). "'Use of a trade secret means commercial use by which the offending party seeks to profit from the use of the secret,' and includes 'any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant' or any reliance on the trade secret to assist or accelerate research or development." *RSM Prod. Corp.*, 507 S.W.3d at 393 (quoting *Sw. Energy Prod. Co. v. Berry-Hefland*, 491 S.W.3d 699, 722 (Tex. 2016)).

Red Ball asserts that its trade secrets consist of technical information and business information. Its protected technical information is in its "complex spreadsheets used to formulate and label various gas mixtures used in making standards." (Doc. No. 14 at 5; Doc. No. 8 at 4–5) Its business information includes records of customer purchases and other data, as well as Red Ball's pricing structures. (Doc. No. 14 at 5; Doc. No. 8 at 5.) Red Ball alleges that Rodriguez and Kennedy had access to this information while at ISGAS and took it to Precise Standards, which now uses it despite knowledge of its unlawful origins. (Doc. No. 8 at 8.)

Defendants' motion to dismiss makes several arguments against these allegations. Defendants argue that Rodriguez, a former ISGAS salesperson, had no access to the spreadsheets or related technical information at issue here. (Doc. No. 13 at 7.) In addition, Red Ball's

complaint lacks any factual content showing that Rodriguez took specific information or took part in specific uses of information. (*Id.*) In its response to Defendants' motion, Red Ball offers nothing that addresses this deficiency in its complaint. Accordingly, dismissal of the state-law trade secrets claim against Rodriguez is appropriate.

Kennedy, by contrast, was allegedly a blend lab manager at ISGAS. (Doc. No. 8 at 5.) He would have been well positioned to know and to take the allegedly misappropriated spreadsheet information. Kennedy's work as a blend lab manager also connects him to Red Ball's core allegations concerning the gas cylinder with the Precise Standards label observed by Jimmy Collins. Those allegations have the specificity and plausibility that federal law requires. Construed in the light most favorable to Red Ball, the allegations permit this Court to make the reasonable inference that Kennedy took part in the misappropriation and use of trade secret information. So too for Precise Standards, which had its logo on the label.

As to Kennedy and Precise Standards, Defendants unpersuasively portray Red Ball's misappropriation claim as concerning only the formatting of the label observed by Collins. They insist that the format of the label could be created by any person with basic office software, and so the label does not yield an adequate inference of unlawful conduct. (Doc. No. 13 at 4–6; Doc. No. 15 at 4–5.) These arguments miss the mark. Red Ball relies on the label observed by Collins not because of its format but because of its content. From the information within it, particularly the NIST numbers assigned to ISGAS years earlier, it may reasonably be inferred that Precise Standards was using proprietary information taken from ISGAS and hence from Red Ball. The process of litigation will serve to test these allegations and the inferences they yield. For now, the allegations are adequate for these claims to survive.

### c. Misappropriation of Trade Secrets under Federal Law

Under the Defend Trade Secrets Act, the "owner of a trade secret that is misappropriated may bring a civil action … if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). As defined in the Act, trade secrets include:

> all forms and types of financial, business, scientific, technical, economic, or engineering information … if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent value, actual or potential, from not being general known to … another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Misappropriation means the improper acquisition or unauthorized disclosure or use of trade secrets. 18 U.S.C. § 1839(5).

The foregoing analysis of Red Ball's claim for misappropriation of trade secrets under Texas law applies also to Red Ball's claim under federal law. No factual content in Red Ball's complaint ties Rodriguez to the alleged acquisition, disclosure, or use of trade secrets in any specific way. By contrast, Red Ball's allegations against Kennedy and Precise Standards are sufficiently specific and plausible. Accordingly, the claim against Rodriguez should be dismissed, and the claims against Kennedy and Precise Standards should not.

## IV. CONCLUSION

Accordingly, Defendants' Joint Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Red Ball's claims for breach of contract against Defendants Rodriguez and Kennedy are dismissed. Red Ball's claims for misappropriation of trade secrets under state and federal law against Rodriguez are dismissed. Its claims for misappropriation

under state and federal law against Defendants Kennedy and Precise Standards and Solutions, Inc., however, are not dismissed. As to those claims, Defendants' motion is denied.

In its Amended Complaint, Red Ball made a request for preliminary injunctive relief. (Doc. No. 8 at 9–10.) With the Motion to Dismiss now resolved and the case confined to legally valid claims, Red Ball may, if it wishes, renew its request for a preliminary injunction in a new motion that complies with Rule 7.1 of the Local Rules. Upon such a motion, the ordinary timetable for briefing and argument would then follow.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on the 3rd day of January, 2018.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE